Good morning. May it please the court, my name is Anthony Zorich. I represent the government in this case and the government was deemed helpless. I would ask to reserve about 2 minutes for rebuttal in this case. The question raised in this appeal is whether a material false statement made in an immigration document and presented to immigration authorities must be made under oath or penalty of perjury to be in violation of section 1546A. The government submits that it does not, that the presentation alone of the immigration paperwork knowing that it contains material false statements is sufficient. Will we have to look at the statute? Absolutely, Your Honor. We're going to have to do that. The defendant and the defense and the district court disagree with the government's position. The government's position is supported by the text and the structure and the purpose of the statute. Which is not so clear. We wouldn't have this argument if it was clear. But as this court has said, almost every statute has some ambiguity in it. Well, Congress doesn't get out of its way and write clear statute, but I'm not sure that I would say every statute. That's a strong statement. Go ahead. Especially for the government to make. That's a quote from the Third Circuit, I believe. Not from me. The government's position is also supported by the case law now in the Second Circuit and by the statutory history, I would suggest in this case. The first thing I ask the court to look at is the purpose. It wasn't. I looked it up. It's not a signed opinion. It's a curcorium by the Second Circuit. I wanted to know who wrote it. Your Honor, when you look at the purpose of the statute. Don't we have to look at the language of the statute first? Absolutely. Okay. And you have a such in there. And you say such refers only to half of what precedes it. Under statutory construction, how can you say a such can pick out what it refers to? Well, Your Honor, I think what you have to do when you look at that language. There are two uses of what I would call the phrase such as in that section. I mean, they present a clause of 1546. There are two uses of such as. Any such application. Right. But it says any such application affidavit or other document and any such false statement. And I would suggest to the court that what has to be done is they have to be used consistently. Certainly within that statute itself. And when you look at it, you find the words any such application affidavit or other document. And the presenting clause clearly referred to the words in the making clause. It's the same words. Application, affidavit, or other document. Then followed by required by immigration laws or regulations prescribed there under in the making clause. So what the statute uses is the same subjects application affidavit or other document. Followed by the modifying clause. In that case, required by immigration laws or regulations prescribed there under. I suggest the court should do the same thing in using any such false statement to be consistent in the statute. Mr. Zurich, you know, I have to tell you. I can't tell you how many times I've read the statute, tried to understand what it says. And what I do understand is that this is a criminal statute. It imposes up to ten years in prison. And a statute is supposed to be written in a manner that, you know, informs an ordinary person what conduct is illegal. And I struggle with this thing over and over again. I understand. Yeah, I wasn't there either. Well, some people know that this is important. But, you know, this statute is one sentence. It's one sentence and it contains 76 words. It has the conjunction war is repeated eight times. How do you get to understand what this thing is saying? Well, it's a perfect example of Congress inflicting the Eighth Amendment on the judiciary. Well, I'll go back to your original statement, which is that a statute is supposed to inform a person of what is illegal and what is illegal. To accept the defense's proposition in this case, you have to accept the fact that this defendant could fill out an application and immigration document. So you're going into the conduct. And then you're going to fit the conduct into your reading of the statute. What I'm asking you is how do you look at this on the first or second reading and understand that if I sign this document and turn it over to a school, I may be subject to ten years in prison if that statement ends up being false? Well, not just a document, Your Honor, but a document that contains the words. Everybody agrees. I said false. Even he would agree that it isn't true. Yes, Your Honor. But the question Judge Fuentes asks is does that make a difference? I'm sorry. But it isn't true.  Well, I think, you know, again, we'll be taking that away from the facts of this case. You know, then you just look at the statute. And I go back to the judge's initial argument or initial statement. How do you know what you're doing is wrong? I think most people, I'm looking at the facts of this case. Most people know it. If they lie in a document, they give it to the government, the government relies on it, they get something back from it, that's wrong. I can make a mistake. I don't know. What's wrong about it that he said that, that he attended the program for X number of hours? He intended to. He intended to, but he realized that they were showing video movies of this program and it really wasn't the program at all, the change of seizures. Your Honor, let's say there's a misrepresentation because it wasn't going the required number of hours per day. Is there something here that tells me that if that statement is wrong and I submit it to the school, I'm going to prison for 10 years? Your Honor, first of all, it wasn't that the defense wasn't going for a certain number of hours. He wasn't doing it at all. But he was working, wasn't that it? Well, he said he was doing other things, Your Honor. I think, unfortunately, we're getting to the American advance of the statute. It's kind of missing if it fits. My problem is understanding what this says in the first or second reading. And I just think it's impossible. If I read this right now, and I would be afraid to read this right now, I don't need to find two people in this room that would understand what I'm saying. Your Honor, I don't want to disagree with you that when the first reading of the statute, it takes some time to go back over and read it. But I think when you look at the purpose of the statute, when you look at the statutory history in this case, and then when you look at the language, and I didn't complete that last section, but when you look at the, such as a false statement, you go back and it should be, again, the same word, the false statement, and what follows it, which in this case is the materiality of the court. So as to the use of the language, I suggest that the defense's argument is wrong. As to the purpose of the statute, when you look at the entire statute, all four paragraphs, you find that Congress clearly was intending to prohibit all forging on acts regarding immigration documents. They prohibited forging, counterfeiting, altering, falsely making, uttering, using, possessing, obtaining, accepting, receiving immigration documents, knowing they're forged, counterfeiting or falsely made, impersonating another, and on and on and on. And then you get to this part where you say, well, they must have not had in their contemplation that someone who presented a document with lines of it, false statements, that they're going to rely on, that that would be a violation. He was originally charged with making a statement under Routh, wasn't he? Yes. And why was that changed? Your Honor, in preparation for trial, I looked at it and realized that didn't apply in this case. You were confused by the statute? I wasn't confused. I was just... I was just... You were invited to conform with your renewed understanding of the statute. Well, I was there a bit more closely, yes, Your Honor. But if you wanted to get this guy for making a small statement, a statement under Routh that was false, you could have, because he did. You just picked the wrong document. There was, well, if we go back to his original documentation, I'm not sure we were still in the statute at that point. I think we probably were, but it would have been close. So this was the most applicable one. This was the one that he had the most evidence on, because as the court indicated earlier, it's not simply that he makes a false statement, but at the time he makes the statement, how can you show that he intended to defraud the government? In this case, he ended up not going to classes at all, not paying any tuition, working at a new job. He did go to the classes some. Not for the one and equal, Your Honor. From January 22nd of 2010 until June 2010, he didn't attend one class. And you can kick him out of the country anyway, right? Theoretically, Your Honor, yes, that's true. I would ask the court to look at the statutory history of the case, that perhaps this is the most important factor, since the court has not really evidently indicated that they're going with what I've said so far. Don't take what we ask in oral. I apologize, Your Honor. I mean, you know, that's our job to impress you. Consistent with our job, I'd like to ask you, how did he become a presenter? He can either be a maker of a document that is under oath false, or he can be a presenter of a document that contains a materially false statement. He presented it to the official in the school, Maxwell, who was a quasi-governmental official at that point. A quasi-governmental? Well, she's representing the government in this program, the CFS program. She's not a government employee. No, she's not a government employee. Because she's acting in the place of the government at that point. Okay. If she inputs the documentation, she gets into a computer system. I don't have a basis for doubt, Your Honor. But is there a basis for concluding that she is, in fact, a government official? She's not a government official, no, Your Honor. But she acts instead of the government. I mean, she takes the information he gives. She inputs it into a computer and that goes to me. Because she is processing the paperwork? Yes, Your Honor. And his presenting a document that contains a false statement is the act that subjects him to the criminal penalty? Yes, Your Honor. How often does the government prosecute people for unsworn statements? I don't think I've ever seen it. Not even 34 years. Almost. I only have 18 years, Your Honor. I can't answer that question to you, so I'm not certain. When you do your tax return, it goes to somebody and then that somebody files it for you with the government. But there's a provision above your signature that says if something here is not true, you're in trouble. Well, at least he gives her the form and then she also swears under the penalty of perjury that the facts are true and correct. But there was nothing in the document that he submitted that would alert him that if anything in the document itself is false, he would be subject to criminal penalties. He said that he certified that the statements were true and correct. He certified it according to the document. Was the certification in the document that he signed? Yes, it was. Just saying that I certify that the statements are true and correct. Okay, that's different from an oath. Yes, certainly. Isn't this statute at least ambiguous? I look at what we're going through and look at the papers that have been written. And if it is ambiguous, are we required to apply the rule of leniency? Your Honor, what the court has said in the past is that the Third Circuit said after... The one that counts. Yes. And he said if after considering the text, the structure, the history of the statute, there remains a grievous ambiguity or uncertainty in the statute, then the rule of leniency would apply. And she, through Ms. Gonsai, does imply if only there's a mere, this is what I said earlier, a mere suggestion of ambiguity because most statutes are ambiguous to some degree. So... Judge Welch said she didn't say that. No. And I expect that, and I hear it very often, but I expect that in front of this court oftentimes the argument is over the statute, what it means and what it doesn't mean. Congress doesn't like you, Al. That's what you're saying. Okay. Thank you, Your Honor. We'll hear you on rebuttal. Good morning, Your Honor. Brett Schweitzer of the Defenders here representing Mr Asheroff today. Mr Schweitzer, he obviously... ...applied... It's obviously false. Why doesn't the government have the right to say, you know, you want something from us, you want a visa, you gave us a false document. We're not going to accept that. We're not going to let you get away with that. Why isn't the government entitled to that? Well, Your Honor, because there's no doubt that the fourth paragraph of 1546 focuses on those. It puts out there those requirements. The issue is does it... ...the making clause or the presenting clause. And I would submit to you that there are two background critical facts here which really go to Your Honor's question which show why there's no problem with the defense reading of the statute, the appropriate reading of the statute. One is that, again, the oath requirement is the very first thing mentioned in Section 4. When we get there, it's, okay, this is about statements, false statements made under oath. Those are important statements. Those are the most culpable statements. But he knew it wasn't true. That, well, Your Honor, with respect to... The judge found that the court had actually done one count and acquitted on the first count and convicted on the second count and made that finding without disputing that. But the other important thing is the government here is in total control of what is... Well, no, no, Your Honor, let me be more precise. It writes the integration forms. It provides, it requires, whenever it deems, whichever statements it deems the most critical to integration enforcement, the most important, the most material, whatever, it imposes an oath requirement. So the government can change the form if they want to. Absolutely. The government can change the form. So with those two background facts... And they didn't after the Second Circuit opinion, which went against the government. Well, the Second Circuit opinion actually held that the oath requirement doesn't apply with respect to the presentation. However, that case has never been cited. It's sort of out there, you know, 30 years. Well, this doesn't come up that often. That's what I... I think it's because the government, this isn't a big problem. The government writes the forms. The government specifies which things are to be sworn, which aren't. The government can charge. They could have charged the 115, the 519 here. Excuse me. Is that out of the statute of limitations, or is it still... I haven't worked out the date, but you know, in statutes to conform developments, you know, how long they took in charging. Maybe they should have charged earlier. Who knows? They could have charged under the district court's reading. They could have charged Mr. Ashcroft with presenting the secure statement. That was under oath. So, you know, once you understand those two things, there is an oath requirement in paragraph 4, and the government can impose that oath anytime they want, that oath requirement in the document, anytime they want. The only thing, the only sensible ruling in the statute is that sworn statements, important statements, that's going to lead to current criminal liability. Honestly, sworn statements are not. No, wait a minute. I mean, Jeff Sullivan was talking about he only presented a document that contained a falsehood. That's the government's interpretation. What's unreasonable about imposing penalties on somebody that, consistent with the reason that he's trying to preserve, makes a false statement to an official? Well, it would be unreasonable for the government to write an oath requirement on his signature. It would be unreasonable for the government... But the government is saying that the oath requirement doesn't apply to the presented document. Right. That knowingly is false. Well, then the problem with that is twofold. It needs to tell the arbitrary results, really, and it needs to make just a proposition. Well, you better stop there and tell us why it's totally arbitrary. Because under the government's reading, okay, there's an unsworn statement. If the person who makes that statement submits it to the government, that is not a crime, because even the government admits that there's an oath requirement for someone who makes a statement. Now, if the defendant instead... Except the government's position, as I understand it, the government says, when you present a document that contains a false statement with respect to a material fact that does not require the oath requirement, and that's what it says, it has what I think in this case, that the defendant should be found guilty. That's correct, Your Honor, and just let me articulate that, because I think it does address your point. The issue is... We have two hours to get to that point. The government... We'll talk about that in a second, but the government says... Is that for the judges? The government says that the oath requirement applies when the statement is made by the person and submitted in a form, but it doesn't apply when the person... When a presenter, you know, the person who presents the form, it doesn't apply in that context. There's no oath requirement for presenting liabilities. So what that allows... Why does that make any sense, by the way? It doesn't make any sense, because it makes sense to... So, I mean, why would Congress have done that? I would submit, Your Honor, it doesn't make sense to draw the line of criminal liability between makers and... Quote makers and quote presenters. But Congress did it. Well... The statute clearly does that. It makes a line. Well, no, it does, but the question is, what does the oath requirement apply to? Does it apply to both, or does it apply to one? So I would suggest to Your Honor that the critical point here is that if someone makes a statement and then gives it to the government, under the government's view, an unsworn statement, that's what we're talking about, an unsworn statement under the government's view, no crime. But if that same person makes the same unsworn statement, takes it to the equivalent of a tax preparation service or has someone present it, all of a sudden, that's a crime. That makes no sense. It makes no sense why criminal liability would turn on who hands the document to the government. Now, Judge Fuentes, with respect to your point about presentation, I think it's an excellent one, and I, frankly, I wish I would have made it myself on the brief. There's an alternative basis here to affirm, which is that Mr. Ashcroft isn't just an assumption of insufficiency. Mr. Ashcroft is not a presenter at all. The DSO is here. Well, I think he's a presenter in the sense of turning in the document, but I did have some question about how that ends up being presented to the government. So that would be subject to the statute. And I don't think it will be. In the presentation under the statute, it must be intended to the government. It's an immigration document. Now, this testimony was perfectly clear from the government's witnesses. The experts in this program brought in from ICE. They said a student cannot access that database. The submission to the government happens by the school official. The school official puts it into the computer database, and that's what happens. So I do believe if the court were inclined, that's a way to avoid this issue. Now, I would like to show, Your Honor's probably can't see, but this is my markup of the statute. Four colors, circles, arrows, everything. I suspect Your Honor may have something similar. But when you go back to simple statutory construction, we've got a such. And what does the such refer to? To me, I find it difficult to conceive how you can pick and choose any such. What I'm talking about presents any such application. Whoever knowingly makes under oath any full statement with respect to a material fact in any application or knowingly presents any such application. It seems to me that any such application has to include making it under oath and it being material. And how do you just say,  I think you're absolutely right, Your Honor. What we have to do is we have to look back. That's a common way to draft something, especially when we have requirements. We already have 150 words in the sentence that we're going to say any such. And you have to look back. What is the sensible record of that such? If you cut out the records to section 1746, it makes it a lot easier to understand, I think. It does, and I sort of condensed it in my brief just for that reason. Because frankly, the first few days I had this case, I was possibly over the rules of statute and still am today. So I think at the end of the day here, I don't see how the government can get around lenity for sure. Well, they tried. They did, Your Honor. And the standard for lenity is after employing all the standard techniques of statutory construction, text, structure, legislative history, evidence. Grammar. Grammar, everything. Then if the court feels that it's left with essentially guesswork, then lenity must apply. As the court noticed just very recently in the Sabani case, that was the holding of that case in referring to the importance of lenity. So I think at the end of the day, that backstop is really something that the government can't get around. But in any event, I do think the statute, once we plow into it as we're obligated to do here, the only sensible reading to avoid surplusage is the defendant's reading. Because otherwise, what you have here is exactly what unfolded. It doesn't really matter. Most people in these immigration forms are going to make the statement and present it. I mean, this covers hundreds of forms. Who knows? I mean, how many immigration forms there are? The statute implicates all of them. So the Monument case here is a defendant makes a statement. I'm from such and such. I'm applying for asylum because I'm persecuted. Whatever. This isn't asylum. This is visa. That's right. But the statute applies to all forms. And so what happens is, under the government's reading, that the primary, obviously applicable language in most cases, which is, I'm being allowed to apply on my immigration form, it's not going to matter if there's both. Because in those 95% of cases where the person making the statement is also the person handing the form, we'll just turn it under the percent of liability. That reads the oath of requirement out of the statute. And that's a fundamental candidate. Why would you think the government would want to do that? Why would the government, Congress, take out the oath of requirement? Well, I think what Congress did was set an oath. They gave the government the keys to write any form it wants, impose any oath it wanted. You could have an oath every time. It doesn't matter. But what Congress recognized was, there's a range of statements that The customary thing is, when there's an oath of requirement, that's going to single out the most important documents. It's going to single out the ones that are critical to enforcement. And you know what, government, you make the choice. You make the decision. So that's the right thing in the statute. So it makes sense that there would be an oath of requirement. Now for the presentation. I suppose you can actually be a maker and a presenter at the same time. Absolutely. Most of the time, I think you are. How does that help us understand the statute? Because it looks like there are two distinct provisions. Because basically, what that would mean under the government's reading, or the dichotomy where the oath applies to one and not to the other. OK? If what really happened here was someone made it, as it was originally charged here, what really happened is someone made a statement, but it wasn't under oath to the government. Then that oath of requirement becomes, it gets tossed under the garbage. Because if the government can just say, ah, forget that. I'm going to charge them as presenting the document and get out of that oath of requirement, that's what they're going to charge me. That's what they did here. So that informs the reading of the statute. Because we should be suspicious of that. We should be suspicious that Congress would write a statute starting off saying, statements made under oath material, da-da-da-da-da, is not, oath requirement is not going to apply in 95% or 99% of prosecutions. This doesn't make sense. So that's the surplus of jargon that I'm talking about. No, but it would make sense to impose the oath of requirement on somebody who makes a false statement, because the person is making it. In other words, it's a word to write down. But somebody presenting it, you could present it over the mail, right? So you wouldn't be making, you wouldn't be presenting it, having taken an oath. Well, I think that the government's argument as to why out of that box, so to speak, of making all this surplusage, is that, no, we're worried about, actually, we're worried about these, the makers who may be innocent, who may be not culpable, and the presenters, right? They are the ones that the government says, well, there should be, you know, there should be the most liability for them, the broadest liability, because they're the one who's handling the document. But that doesn't fit the facts of the situation. Like your Honor said, maybe the mailman, maybe the girlfriend, maybe whomever actually presents the document isn't necessarily less culpable. What is important is that there is no reason the government says that, you know, there's a good reason for just having the oath for makers, not on the presentation clause. And that reason is because we might have these makers who don't really know, they're distant, they don't really know that their statements are going to be used in an immigration document. And so there's some of these potentially innocent people out there, we don't want to impose a liability, an oath requirement. That's just not the case, because when you look at the statute, what's absolutely clear, and this is under the Flores-Figueroa case from a few terms ago, this is kind of clear, both the maker of the statement and the presenter of the statement have two requirements. They must know the statement's false, and they must know that it's going to be used in an immigration document. So there's no... the whole engine driving the government's argument for imposing an oath only on the making clause and not the presentation clause is a sham. I mean, what really is going on here is that there was a wrong charge in this case. Thank you very much. Thank you. Thank you. I think the problem with that argument, to be honest... Wait, you have to... All the talking has to be on the mic. You started when it was down there. Thank you. I think the problem with that argument and the defensive argument is when you look at the statutory history of this statute, it starts off in 1948. Now, the original language only penalizing false statements made under oath. There's no language about the presenting clause. There's no materiality language at that point. Then in 1952, it was amended, and the presenting clause... Yes, you say that's clear. Go ahead. It's amended in 1952, but at the same time, materiality language is added. Perhaps the most important... Excuse me. While you're on 1952, but you said that it's clear that when the presenting clause was added in 1952, the word such referred only to the materiality language. That's the argument we wrote, Your Honor. Again, with the... That's the government argument. Absolutely. It's not this country. And yet the language being added at the same time also adds, I think, something to that argument. But perhaps the most important amendment is the one in 1996 where the court then has the language or which fails to contain any reasonable basis in law or in fact to the presenting clause. Castlewood, in his brief, acknowledged that that section, if the government was proceeding on that section, doesn't require an oath. So what led to the ruling then was that for 42 years, from 1952 until 1996, an oath was required in the presenting clause, and then Congress, evidently not being aware of that, decided to add the section that does not require an oath. And I would suggest to the court that that leads to an absurd result because now what the fact finder is left with, or what the court is left with, is trying to determine the factual question. Is it a false statement? Or is it a statement which fails to contain any reasonable basis in law and fact? Does a false statement, according to the defendant, require an oath? If it's a statement which fails to contain any reasonable basis in law and fact, it doesn't. And I would suggest to the court that again, if one of these have certain results that statutory interpretation cannot be led to. Wouldn't a little more careful charging avoid some absurd results? No, no. My wife tells me I should be a little more careful in almost everything I do in life. And this is sort of one example where... And that would avoid absurd results, right? Yeah, of course. She's absolutely right. Absolutely. Okay. But I don't think that turns this case. I think when you look at the statutory language, the history, and I think the statutory history is going to be very important in this case. And the purpose of the statute... It's a really patchwork piece of legislation where you say you should look at the history. Of course, the problem is that a statute that's criminal in nature is supposed to inform readily someone who reads it of what conduct is criminal. And that's really a due process issue. I mean, you're supposed to be able     But the statute doesn't seem to do that. I mean, if I do this, I'm committing a crime. But the statute doesn't seem to do that. My last question, I guess, would be on... Basically, that statute says you're not to commit... You're not to present false statements in an immigration document. That's what it says. Now, does the defendant think it under oath? No, I don't think so. He's told, don't present false statements in an immigration document. Give it to the government. And that's what he did in this case. Thank you. Your time is up. Thank you. We'll take them now under advisement.